Next case is Mid-American Salt v. Morris County Cooperative. Ms. Hersperger Good morning, Your Honors. Stephanie Hersperger on behalf of the appellant in this case, Mid-American Salt. We are on appeal from an order from the district court. Is there reserve time for rebuttal? Yes, I'm sorry, Your Honor. Four minutes, please. Okay. That will be granted. I apologize. We are on appeal from the district court's order dismissing our amended complaint in its entirety, which contained a breach of contract claim and implied good faith and fair dealing claims. Getting right to the heart of the matter, Your Honors, the district court found as a to have exclusivity sparsely stated in it. It cannot be implied. All right. Let's assume we agree with you for a minute that it doesn't have to be explicit. It's awfully strange to see something that you think is a requirements contract that doesn't say that it's a requirements contract, isn't it? I mean, what's troubling me about this case, quite frankly, is that if we assigned a project to a first-year law student to write a requirements contract, this contract would have gotten an F, right? Because let's start with the basics. Buyer agrees to purchase all of its salt requirements for the 2016-2017 winter season. And seller agrees to sell the buyer all that buyer requires at the price of $64 a ton, period. That's a pretty clear requirements contract, right? That would be the best language to use in one, I would agree. It's not hard. It's simple. Instead, we've got a very convoluted scenario here where you've got all of the co-op as the intermediary on behalf of some 200 government entities, and not one of those government entities is required to buy a pound of salt, never mind a ton of salt. Isn't that right? No, Your Honor, I would disagree. Okay, what in the document requires each of those townships, counties, et cetera, to purchase a certain quantity of salt? Not a certain quantity, a quantity that's not reasonably disproportionate to their estimates. That is what a requirements contract is. And under New Jersey, that's adopted, that section on outputs and requirements contracts. It provides that if you state an estimate, and these are used a lot in cases where goods, you don't know how much you're going to need. In this case, for instance, we can predict what a winter season is going to be like, but we don't know. They did not state, and we did not write the contract, unfortunately. Only MCCPC did. Let me just interrupt you on that. This language comes from bid specifications that MPPC wrote. Yes, Your Honor. And MCCPC, sorry, that they wrote. And so is there, and then your client submitted bids in response to this language. And so your client didn't write this, but your client wanted to be accepted for performing this way. But this bid specification says, quote, no minimum order requirements are allowed unless otherwise, unless stated otherwise elsewhere, quote. So your client submits bids to a bid specification that says no minimum order requirements are allowed unless otherwise specified. So it seems that didn't your client have some degree of notice when they decided to submit a bid that there wouldn't be minimum order requirements? They didn't have to submit a bid if they didn't, no one made them submit a bid that they chose to in response to this bid solicitation. Your Honor, I think that that was referring to when they placed their separate orders. The counties that are part of this agreement all submitted estimates, and that's what they're being held to in this case. Or proportionally held to. Yes, Your Honor. Yes. So your argument is that they had to buy precisely what their estimates were in the proportion? No, Your Honor. They don't have to provide that by that exact point. Then what was the number? What number? We need discovery. You want us to just invent one? We need discovery on that, Your Honor, because that goes into the good faith and fair dealing. That's a gap filler in this type of contract under the UCC, in which the Superior Court in New Jersey addressed in Telcon. What weight should we give Comment 3, which says, quote, if an estimate of output or requirements is included in an agreement, no quantity unreasonably disproportionate to it may be tendered or demanded? That's just a comment to New Jersey Statute 12A2-306. Is that comment entitled to any weight, or is that just kind of like comments to the civil rules of procedure where we can take them or leave them? I think it's advisory. I think it can be used as persuasive, and they're giving you what their thought was when they wrote it. It's not binding, the comment. I think it's the actual rule that you look at itself. And as I said, two years before we entered into this contract, New Jersey Superior Court found that another contract that MCCPC entered into with an asphalt provider in the Telcon case was a requirements contract, and it provided only the estimates. It did not provide that they had to buy all of their asphalt from this provider. The court said that that was inferred from it. And again, it was reasonably proportionate. Now, in that case, the court ended up finding that even though it was a requirements contract, the asphalt provider waived that argument by continuing to produce it in disproportionate amounts. So we have that case, and that's very on point from a New Jersey court. It is not binding, and that is why the district court rejected it, but the court did not even consider that case at all in this analysis. In fact, in the court's opinion, the court did not cite to any cases that discussed whether exclusivity can be implied or it has to be expressed. And it's also not against the co-op's purpose, which is to save taxpayers money. The court addressed that in the Telcon case and said, why would bidders want to enter this type of contract at a set price if basically it's all one-sided? So that's on the requirements contract, Your Honors. So you're right. Telcon certainly goes your way, but then we've got SPARTA going the other way, right? What case, Your Honor? SPARTA. Your Honor, that is not what they say that case is. That's an administrative court case, and in that case, there was not an MCCPC contract even at issue. There was a dispute in that case between whether a cooperative or a board had formed in order to buy oil. And one of the members, SPARTA, said, in discovery. By the way, we have a contract through MCCPC where we can buy oil from anyone. That was their representation in discovery. We don't have the language of that contract. It was not at issue before the administrative court, Judge. That was just SPARTA's position, and it's one of the members of the MCCPC. So obviously, that's its position, but that was not a court. But the judge, the administrative judge, said that SPARTA was not required to purchase a specific quantity or all of its fuel oil needs from Finch Fuel, but had the option to purchase as little or as much fuel oil as it wanted. That seems to map onto the language of the contract at issue in this appeal, doesn't it? Your Honor, I believe that he was making all of that when he was discussing for about 20 pages what was shown in discovery. I don't think that he ever made that finding, nor would I see how he could when that language was not even before him for that contract. In trying to predict what the New Jersey Supreme Court might do or would do with this case, do we have any other benchmarks besides TILCON and SPARTA? We do have several prior New Jersey cases. They're not exactly on point, but they were before the adoption of the UCC. And they found that exclusivity can be implied. Now, they're not exactly on point, but I will say in both of them, they conducted discovery. Because you're talking about filling in a gap filler for a missing element in a contract. Again, let's assume we agree with you that exclusivity can be implied. You've still got to have a good reason to imply it in this contract. And what I'm wrestling with is, even though there are estimates here, those estimates don't suggest, as far as I can tell, that the government entities proffering those estimates might not choose to buy salt from one or two other salt providers in addition to your client. What am I missing there? Because it's implied. Otherwise, it's an illusory contract. Well, that's what I'm saying. I think it may be an illusory contract. That's what I'm trying to get at. I mean, it looks to me like your client was raked over the coals, quite frankly. Your client spent $93,000 on a $9.3 million performance bond. It brought all the salt over from Morocco. It had to store it, put tarps on it, all in what seems to be perhaps justifiable reliance that it was going to be selling a lot of salt to the members of the co-op. Yes. Okay. The problem is your client didn't negotiate a contract that required any of those entities to actually buy all of their requirements from your client. Where does it say that they have to buy all of their requirements from your client? And if they didn't have to buy 100% of their requirements, then you need to show us what quantity other than their requirements they were obliged by law to purchase. Well, Your Honor, that's the whole issue with requirements contracts. With exclusivity being inferred, it's not in the complaint. And so you go by commercial standards and good faith, which needs to be developed. We would need to get into discovery. Sorry, you can finish. No, I was going to say we would need to get into discovery to determine, for instance, we pleaded that they bought from our competitors, who, by the way, were in the same bidding process, the public bidding process, and lost. We got this public bid. They're required to do this public bid. We really don't have a right to change the contract at all, from what I can tell. Based on Telcon and the UCC, we thought we had a requirements contract. We do all of this, and then they come back and buy from competitors that lost before. Why didn't they go through the public bidding process? Was it because a township of 10,000 people doesn't need to go through public bids? They can just shop it around? Is that how this happened? I'm trying to understand how you got undercut. Obviously, you got undercut because your $64 price was broadcast to all your competitors. Yes. Basically, after it was broadcast, our competitors lowered their prices, and they bought in small enough quantities that they were not required to do the public bidding. Doesn't New Jersey law aggregate those quantities for a given year? If those small enough quantities were in aggregate over $17,500, then they were required to do public bidding? Right. You want Discovery to find out if there was an aggregate amount that was over $17,500, because then those would be illegal, which would help you with bad faith. Am I following your chain of thought? Yes. If it's not a requirements contract, and I know my time is out, we did request a promissory estoppel. I have one question, which is this. It seems that you're really focusing on exclusivity as the only way of showing requirements contract. If it's exclusive, then you've got a requirements contract. If it's not exclusive, you don't. But the New Jersey UCC, when it defines requirements contract, doesn't say anything about exclusivity. So why couldn't it be that you have a requirements contract that is inconsistent with the way the UCC is structured in New Jersey that says you can't be disproportional to these estimates? And maybe disproportionally estimates mean that you avoid a case like Tilcon, which would be that if you start asking for too much, you say, hey, you can't put this much on us. And in fact, Tilcon seems to suggest that exclusivity couldn't be required because their grievance was that you're over asking us and not shopping this around to others. So why are you telling us that if the only way it can be a requirements contract is if it's exclusivity, that may be what Black's Law says, 9th edition or 10th edition, but that's not what the UCC said. Well, we were focusing on what the district court's reasoning was. There is case law, and in the Tilcon case, as you said, the New Jersey court said that there was authority to support that you don't need exclusivity. And Corbin on contracts, I believe, is an advocate for that. I believe it's to the minority view in the different jurisdictions throughout this country. Well, let's just talk about the New Jersey UCC. Where does it say exclusivity? We can talk about Corbin. We can talk about all the other things, but sooner or later, we have to get back to the New Jersey statutes, right? Yes, it does not say that, Your Honor. So if you have a contract that's not exclusive but has estimates associated with it, an agreement, I won't dress it up to contract level, the New Jersey UCC makes a definitional difference between agreement and contract. So we'll say an agreement. It has estimates, but non-exclusivity. Is that illusory or is that enforceable? I think it's enforceable because it says in the subsection 1 that it's the requirements of the buyer means the actual requirements as may occur in good faith. That's the gap filler again, except that no quantity unreasonably disproportionate to any stated estimate. And again, we did cite to that language to the court below and that was our backup argument that we don't need it. But the district court said we did need exclusivity and it had to be expressed. I believe that's my reading of the opinion. But I agree, there's nothing in the statute that says that. And the New Jersey Superior Court in Tilcon also said it was not clear that they needed it. But I think we have it, even if we don't need it. If it was required in Tilcon, Tilcon might not have had the same breach of contract claim because it would have been obligated regardless of the estimates. Yes. To be the exclusive supplier of asphalt. Right. Before you sit down, Ms. Hershberger, the county, the co-op, it appears that there was no appeal taken with respect to the co-op. Isn't that right? Your Honor, the notice of appeal could have been worded better. It did not reference the original order from February which granted all the motions to dismiss and the motions for judgment on the pleadings. It referenced the subsequent order denying the motion for reconsideration. But even more strongly, in the prior iteration, there was a statement that it was not, the motion for reconsideration was not being filed with respect to the co-op, correct? Right. And the reason it wasn't, Your Honor, is because the co-op initially admitted in their briefing that this was a requirements contract. And we were only filing for reconsideration on that one issue, so why would we include them in that? But it strikes me that, I haven't pulled it up recently, but your notice of appeal has two deficiencies. One, it doesn't name the MCCPC as a party. Okay. Maybe that's forgivable if you've got all the right orders. But then second, you don't list the order that the court adjudicated them on. Maybe one, you might be able to play with the flexibility of Rule 3. You might be able to play if you fell short on one. But why can you just fall short on two? I mean, the rule kind of has no meaning if we let sophisticated counsel fall short twice on leaving a party off and leaving the order off. Why should we lower the bar quite that low? Your Honor, first of all, they weren't left off the appeal. Okay, sorry. No, they were not in the substance or the text of it, but they were on the caption. And under Rule 3, it only says the party taking the appeal must be contained in the caption or the body of the notice. That is us. That's Mid-American salt. So the only issue, and by the way, they did not address that in their brief, so it was waived. So the only issue we were looking at is whether the motion's order for reconsideration encompasses the original order. And we had gone through the Polinsky factors in our brief as to why it does. I can get into those, or I can rely on our brief for those. Okay. Judge Nygaard, any questions at this time? I have none. Thank you. Okay. Thank you, Ms. Herzberger. We'll hear you on rebuttal. We'll hear first from Mr. Buzek on behalf of the co-op. Good morning, Your Honors. May it please the court, Edward J. Buzek on behalf of the Morris County Cooperative Pricing Council. I will refer to them usually as the MCCPC.    by Mr. Buzek on behalf of the Mars County Cooperative Pricing Council. I would like to ask the panel to dismiss the MCCPC as a non-party to the appeal for the reasons that Judge Phipps had raised. The notice of appeal that was filed was very carefully drawn. And it was filed not by this council. It was filed by prior council to MidAmerican. And it listed specifically each municipality, each entity against whom the appeal was being taken. It had the first group and it had the second group. But then it included, again, as Judge Phipps pointed out, the specific reference to the motion for reconsideration that the court denied in April of 2018. That motion for reconsideration did not include the MCCPC. And it wasn't just an inadvertent exclusion of the MCCPC. It was a deliberate, articulated in their brief, exclusion of the MCCPC. In fact, the reason that we brought the motion was because when we received the appeal, we assumed the MCCPC that we were not included in there. You were put on notice that you weren't a party to the appeal. Through the electronic system and we looked at it very carefully to see if we were. And it was only when the civil appeal information statement was filed by subsequent counsel. Again, not counsel is arguing here, but subsequent counsel that they raised the issue that the MCCPC was included in the appeal. That prompted an immediate response from me on behalf of the MCCPC to them saying, I think you're mistaken. And we go through that email chain in the brief and I won't bore the court with that. Well, even if you're right, we have you here now. So, what is going on with this contract? I mean, this strikes me as truly strange. You got all the benefit. You and your, I don't know if MCCPC got all the benefit, but your constituents got all the benefit of the purchasing power of your organization. And MidAmerican got nothing out of the deal. What did they get? They got an option to sell you salt at $64 a ton if your members saw fit to purchase salt from them. That's all they got? There's nothing in the contract, and I think that's where we have to focus. The contract documents were very specific, again, as the court pointed out, to indicate that this is an open-ended contract, that there's no minimum quantities, that there's no guarantees that those amounts will be purchased, and it may be more or less than that. And just, let me just follow up. One thing that makes it even stranger is you negotiated for the benefit of your members to cover rights. If MidAmerican wasn't able to deliver the requirements, the quantities that were indicated in the estimates, your client had a right to sue and to cover at a higher price, and MidAmerican was obliged to cover that differential, correct? Under the bond that was posted, that is correct. Right, and you made them get a bond to do that. And then, meanwhile, on your own website, you tell your members, your membership agreement, says, members may not rely upon the estimated quantities submitted, but instead, all orders are subject to availability by the vendor at the time the order is actually placed by the member. That directly contradicts the cover rights that you negotiated in this contract. The contract documents themselves require that the contractor supply that amount. In fact, when they sign their bid, they say they understand that they are required to provide the product, and they are required to provide the product as needed by the members who have submitted estimates for those products. If and only if they choose to buy. That's correct. If they choose to buy because it's not, we don't, we, the MCCPC, does not purchase anything. We can't direct our members to purchase anything. We are. You go about negotiating illusory contracts. Well, we prepare the master contract that provides a price. We are a cooperative pricing council, not a cooperative purchasing council. All right, so then is it, do you contemplate then that your members would then go and negotiate separately quantity now that you've satisfied the price component of the agreement? Now they need to go negotiate quantity? We can't control what those members do. Those members can, as has been pointed out, go out to bid if it exceeds the threshold, and we talked about the $17,500. That threshold is actually higher if you have a certified purchasing agent. It goes up to $40,000. Secondly, there are members are constituent members of the Morris County Co-op may be members of other co-ops because they are not precluded from participating in other co-ops, and they may well be. We don't have, again, we don't have control over that, but the point of the system is to try to generate the lowest possible price for the taxpayer. That's how the system is set up. Speak of the system more generally. In TILCON, was that a requirements contract? No. That was similar to this contract. I understand what the court said, but that contract was similar to this contract. So then what are you so then what happens if someone doesn't supply the estimated quantity? If a supplier doesn't supply the estimated quantity, in TILCON, they said that would be a breach except for the fact that it's waived. Is that, is it your position that you're actually not doing anything for your clients because you're giving them no right if someone doesn't supply the amount? No. No. You're the negotiating requirements contract and you have the right of redress that comes with that or you have no right of redress. You're just doing something completely illusory. But I think that the concept is that we can't, as you are proffering it, that we can't enforce the contract that's there and I think we disagree on that proposition. The bidder, as was pointed out, looked at the contract that was illusory or executory and you're saying that you can enforce an illusory or executory contract? I don't think it's an illusory contract at all. I think that we set, we accepted the bids, the bids set forth the price at which the vendor is going to supply that product or that service in the event that... If it's not illusory, then Mid-American has to have a benefit of the bargain. What benefit did they get from this agreement? The benefit that they got was the opportunity... All I see is a slew of liabilities. I think they got the opportunity to provide salt for over 200 members... And why did they need a piece of paper? Because of the local public contracts law and the limitations that municipalities have. But you just said if it's under a certain quantity, then they don't need to... And all that's true. If it's under a certain quantity, not quantity, under a certain dollar amount, they are then able to go out and purchase without regard to bidding. However, if it's a thousand dollars or more, they are required to get three quotes and pick the lowest quote. They're not required to bid it in the same way that we bid it. But what meaning do the estimates have then? Why when this bid package comes out, does it have estimates associated with it? Isn't the benefit of the bargain, the New Jersey UCC, which says if you are unreasonably disproportionate to any stated estimate, then the supplier has a claim. Otherwise, we're reading estimates which are the most specific and detailed part of this bid package. We're reading the most specific part of it by reading those in, saying we have now a deal that's enforceable, and it gives meaning to the most specific detailed parts of an agreement. Why isn't that the best reading of the agreement? Because that's not what the agreement says. I think the agreement does not say that at all. But it's built against the context of the New Jersey UCC, which says if you provide estimates and you're unreasonably disproportionate to those estimates, then there's a cause of action. Well, I think it's built upon the local public contracts law and the ability to create the cooperative  contract. Any questions for Mr. Buzak?  none. Okay. Thank you, Mr. Buzak. We'll hear from Mr. Testa on behalf of the local government appellees. Thank you. Good morning, Your Honors. May it please the Court. Thank you. What benefit did Mid-American get? The benefit they had was for the ability to contract with the separate and individual municipalities through the purchase ordering arrangement after the master contract was entered into. So it's a streamlining benefit? They can do higher quantities, then doing it individually, and it's all streamlined because it's through the co-op. Correct. It's through the co-op. It's a streamlined process rather than having to submit to a bid every time there's a need for it. You're able to go through the purchase order system, which is really the contracts at issue, would be the purchase order. The supplier of this all, Mid-American in this situation here, doesn't have to supply the goods to the member municipality at any quantity until that purchase order is issued by that municipality to Mid-American at a definite time. I'm just surprised that this system could even  used. If this case is broadcast to the world, every other salt supplier in the region knows what number they need to get underneath in order to get work. Is that not the case? In fact, we know that did happen here. A lot of salt was allegedly sold at 58 a ton to Mid-America at a certain time. I'm not at the ability to make that representation for all the other constituent municipalities. What I do know is the municipalities that I represent, for example, Bloomingdale, they actually did purchase salt from Mid-American. Only Mid-American? I cannot remember. So it turns out that certain municipalities decided to purchase salt at a cheaper rate from other suppliers in amounts in excess of the statutory cap. Would you agree that that's bad faith? If you're saying that in violation of the open public contracts laws? Yeah, it would be violation of the open public contracts laws, and it's violation of that law, bad faith per se, almost like negligence per se. You violated the statute that requires this conduct, and if you did, isn't that bad faith? A statute tells you you have to do it this way. You don't do it that way. You might have good reasons to do it that way, save the taxpayer money, do all these other things, but you're in contravention of a statute. So when we're referring to the UCC provisions, I do think that there is some sort of misconception with the application of the UCC, and the UCC comes in as a paragraph filler, when the terms of the contract, expressly as written, are subject to an ambiguity and need to be stricken out. Now, in reference to this specific contract, I think it is very clear in paragraph 3 of the contract that was actually executed and signed by Mid-American, it specifically says, members of the MCCPC may purchase items pursuant to the contract by issuance of purchase orders. That's where the condition proceeding occurs from. That's where the contract arrives from. There is a master contract. Underneath that master contract, you issue the purchase order to purchase a specified quantity at the rate that was negotiated through. What's the value of the estimates in the master contract? Are we supposed to say these are the most specific items in this entire package and we are supposed to ignore those? The estimations, I believe, were in response to the ruling that was made by the appellate division, which is not by precedent in this court, on the telecom case that required these estimates to be made by all the members that wanted to opt in. Telecom is controlled? I'm not saying that. What I'm saying is that they had... That's why it was put in, in response to telecom. Correct. And the telecom case is strikingly different in this case because there were members that did not submit estimates that were using benefit of the co-op without their estimates. Well, they were just hoarding asphalt because the price had skyrocketed, right? I don't know if they were hoarding asphalt. I know that there was a change in the economic market of asphalt. It dramatically increased. Right. The more they could buy, the more they could buy. The government is purchasing this to use them with their taxpayer money to improve the roadways that the taxpayers drive on to make sure that the roadways are free of snow and ice so that the taxpayers can utilize the roadways to get to where they need to be. And I think that we have to make the understanding, as your honors brought up, is that the municipalities are spending taxpayer money. They can't commit waste. They can't purchase items that they don't need, even if it was a requirements contract. I'm not saying it is at all, but if it was, that would require them to purchase an amount that necessarily they do not need and commit waste of taxpayer funds. So they can ignore the minimum bid specifications of New Jersey statute if they can get a better deal otherwise? I'm sorry, your honor. They can ignore the bid specifications of the New Jersey statute if they can get a cheaper deal without going through that process? That would save the taxpayer money. The principle is if we save the taxpayer money, anything is good because we are being good and responsible, but we have a statute that says you can't. I do agree with you that the purpose of the bid process is to have a more open review of these contracts to prevent issues from arising, for example, or situations from arising where there's price fixing. That's why the bidding bid is sealed. If it's above that monetary threshold, then you have to do out the public bidding, unless it's an emergency basis, for example. So because that price amount that goes into the bid is so sensitive, if once that's announced to the world, if municipalities go without following that bid process to buy cheaper, isn't that bad faith? I don't think it is, Your Honor. I don't think it is bad faith because, again, the contract doesn't come into place with the municipalities until you submit that purchase order for that specified quantity. Again, there's another issue, too, that we have to deal with, which is whether or not these municipalities already have enough salt to meet their needs at that point in time. So because they give an estimate for... So putting aside the issue of if they already had enough, but if they go out and search for the statute, then that's the question. Is that bad faith? Again, I'm referring to the UCC, correct? Okay. So the case that I cited in the briefs of all the municipalities explain that the bad faith argument or the bad faith claim, it has to be separate and distinct from the  argument. It's not duplicative of it. And the situation here that was alleged bad faith was, well, you provide the estimate to us, you didn't purchase it in line with what your estimate was, but we look to the contract and, again, that's their claim for the breach as well, and the contract in its express ambiguous terms explains that the quantities may be more or less than estimated. No minimum order requirements are allowed unless stated otherwise elsewhere. And I think that the other thing that we have to remember too, your honors, respectfully, is that the general conditions to the instructions to the bidders, it also explains that if there is an ambiguity, where there is something that the bidders need clarification on, and they're all sophisticated sellers, they are required to submit, in writing, their questions to the MCCCP for clarification. Is there a rule that contracts should be construed against the drafter? There is when the drafters are non-sophisticated and the bidder is a non-sophisticated drafter, in this situation we have a bidding scenario. So they dip their foot into the pool per se, knowing what the contract was at the time they submitted their bid. If they had any questions asked to any ambiguities or an interpretation of a bid, they didn't have to submit a bid. They didn't have to dip their foot into the pool at that point in time. I did want to address the issue with the motion for leave to file and the promissory stomp issues. Procedurally it was improper. It was not  Thank you. Thank you very much, Mr. Testa. Ms. Herbsberger deserves some time for rebuttal. I will be very brief. One, the reason we didn't ask them about the contract ahead of time is we thought it was a requirements contract and that the municipalities and the townships were going to buy reasonably proportionate estimates to that.  first time I'm hearing now that the townships and the municipalities didn't have any duty under the  they did the purchase orders. We have NCCPC saying we don't have any duty and now they're saying we don't have any duty under the contract. The contract doesn't say they have a duty, right? I'm struggling to find what benefit your client got. The only thing I can sort of come up with is that it's almost a good housekeeping seal of approval. Your client is sort of broadcast to these 200 entities that it is the preferred or the recommended SALT provider and I suppose if you're smallish or medium-sized township, there's some real virtue in not getting tied up in red tape and just issuing a purchase order. So it might make it more likely that these 200 entities would choose to issue POs and do business with your client rather than reinventing the wheel and putting it out for sale. And  the other thing is that the bad faith is a purchase from our competitors who specifically lowered their prices after we got the bid. And in fact, their estimates were for 115,000 tons. They actually collectively bought 5,500 tons. And it wasn't like we just had the salt sitting around. According to the contract, we had to be ready, willing and able to deliver it within several days. So we had to actually have it stored in the local vicinity. So that's where the bad faith comes into play, is that they use this, according to our complaint. But it's only bad faith if they breach an obligation, right? If they comply with their obligations. Are you alleging bad faith in the formation of the contract or in the performance of the contract? The performance of the contract, Your Honor. But their requirements to perform are based upon what the contract obliges them to do. And I'm having great difficulty finding anything in this contract that obliges them to purchase. Your Honor, in our brief very quickly, under New Jersey law, all contracts have the implied covenant for good faith and fair dealing. All of them. Great. That's a given. We agree with that. Yes. And you can also have a breach of the good faith and fair dealing without there being an express breach of a contract term. And that's the Sons of Thunder case and the Irwin Katz and Associates case. But how is it bad faith for taking any municipality? You go to them and say, hey, you know, you need to buy salt from us. And they say, well, no, it says right in here, this agreement that we're obliged to says we don't have to have any minimum purchase. It says they're not obliged to buy that quantity. Okay, Your Honor, it doesn't say they're not obliged to buy any quantity. I thought it says no minimum order requirements are allowed, so there's no minimum order. But it says, in fact, Your Honor, there's a provision in there that if we don't provide it within several days, they have to go to MCCPC and get permission to buy it from someone else. So why is that in there if they can go and buy it anyway from another provider? You want us to read the word that to mean because they didn't have to buy that quantity. Yes. It stands to reason they had to buy some quantity. Yes. The problem is we have no idea what that quantity is, and we know there are requirements because the contract could have very simply said you shall buy all your requirements from MidAmerica. And that is why, Your Honor, we need discovery. This is on a complaint. We have had absolutely no discovery on any of that. And in the Telcon case and in every single requirements case I saw, they allowed discovery on these issues. If we get to the end of it, maybe some of them can get out in summary judgment, maybe MCCPC can, but right now we're being held to a much higher standard, an evidentiary standard. And, Your Honor, I don't have any other questions. Judge Nygaard, any questions for Ms. Hirshberg? No, I have none. I have none. Thank you, Judge. Anything else? Judge Phipps? Judge Phipps is I see him pondering a question, I think. Does he want to launch it? That's the question. No. Thank you, Your Honor. We thank you, Ms. Hirshberg. Thank you. Thank you, Mr. Buzak and Mr. Testa for the          Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.                    Thank you. Thank you. Thank you. Thank you, Judge. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.